UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-14125-Cannon/McCabe

CAMERON A. HOLMES,

    Plaintiff,

v.

SERGEANT MARTINS,

    Defendant.
_____/

**REPORT & RECOMMENDATION**

THIS CAUSE comes before the Court on Defendant's Motion for Summary Judgment ("Motion") (DE 30), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 40). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED.**

**I.     INTRODUCTION**

This is a pro se civil rights suit pursuant to 42 U.S.C. § 1983 brought against Defendant Sergeant Martins,[1] a corrections officer at Martin Correctional Institution ("MCI") (DE 1, DE 4). By way of background, Plaintiff alleges that he is a former high-ranking member of the "Bloods," a well-known gang (DE 1 at 2). He was "exed out" of the Bloods for "alleged acts of treason," causing gang leaders to issue a "terminate on sight" ("TOS") order against him (DE 1 at 2). Plaintiff alleges that incarcerated Bloods have repeatedly attempted to carry out the TOS order by physically assaulting him at various prisons throughout Florida (DE 1 at 2-4).

---

[1] Defendant states her correct name is Sara Infuso-Martens (DE 30 at 1).

This lawsuit stems from a conversation Plaintiff claims to have had with Defendant on July 1, 2021, during which Plaintiff requested to be placed in permanent protective custody based on his history of repeated attacks by gang members (DE 1 at 5-6). Plaintiff claims Defendant failed to protect him and instead publicly announced Plaintiff's gang membership in front of other inmates, placing him in further danger and causing him to be stabbed by his cellmate approximately two weeks later (DE 1 at 5-6). The Court previously construed the complaint as alleging an Eighth Amendment failure-to-protect claim against Defendant in her individual capacity (DE 4).

By way of this Motion, Defendant seeks summary judgment pursuant to Fed. R. Civ. P. 56(a).

## II.    FACTS

The record shows the following facts. Where appropriate, the Court has noted facts that remain in dispute.

1. Plaintiff is an inmate currently serving a thirty-year term of incarceration in the Florida prison system (DE 29 ¶ 1).

2. Plaintiff testified that he is a disgraced member of the Bloods as a result of acts of treason against the gang (DE 29-1 at 67). Plaintiff described a long history of gang-related attacks inside multiple prisons as a result of the TOS order issued against him (DE 29-1 at 64-68, 92).

3. Prior to July 1, 2021, Plaintiff was serving his term of incarceration at South Bay Corrections Institution ("South Bay") (DE 29 ¶ 4, DE 29-2 at 14). While at South Bay, prison officials placed Plaintiff in "disciplinary confinement" as a result of disciplinary violations committed by Plaintiff (DE 29 ¶¶ 5, 8; DE 29-1 at 23-25, 47-48; DE 29-2 at 14; DE 29-3). Inmates

placed in disciplinary confinement are separated from the inmates in general population (DE 29 ¶ 7; DE 29-1 at 23-25, 46).

4. On July 1, 2021, prison officials transferred Plaintiff from South Bay to MCI (DE 29 ¶ 4, DE 29-2 at 14). Since Plaintiff had not yet completed his term of disciplinary confinement at South Bay, he was scheduled to continue disciplinary confinement upon his arrival at MCI (DE 29-1 at 14-15, 23-24, 46-48; DE 29-2 at 14). When Plaintiff arrived at MCI on July 1, 2021, however, he first participated in an orientation to the new facility along with other incoming inmates (DE 29-1 at 39).

5. Defendant works as a corrections officer at MCI's Security Threat Group or "STG" division (DE 29-7 ¶¶ 1-2).

6. Plaintiff testified that Defendant attended Plaintiff's orientation on July 1, 2021 (DE 29-1 at 39). Plaintiff testified that, during the orientation, he told Defendant, attempting to do so privately, that he cannot be placed in general population due to his history of gang-related attacks and the pending TOS order issued against him (DE 29-1 at 35-38, 45-46). Plaintiff testified that, after he relayed this sensitive information, Defendant loudly identified him as a Blood in front of other inmates, thereby placing him in danger (DE 29-1 at 94).

7. Defendant denies having any interaction with Plaintiff during his orientation and specifically denies ever receiving a request from Plaintiff about his alleged need for protection (DE 29-7 ¶¶ 4-8). According to Defendant, STG officers have no responsibility for receiving, processing, or investigating inmate requests for placement in protective custody (DE 29-7 ¶ 9).

8. Following the orientation, Plaintiff continued to serve the term of disciplinary confinement that was previously imposed at South Bay (DE 29-1 at 14-15, 23-24, 46-48; DE 29-2 at 14). Plaintiff remained in disciplinary confinement, separated from other inmates, until July

13, 2021, at which point he was released into general population at MCI (DE 1 at 6, DE 29-1 at 48-49).

9. Plaintiff testified that he understands the procedures for requesting protective custody (DE 29-1 at 15-17, 69-70). According, to Plaintiff, an inmate alerts a staff member, and the staff member places the inmate into a private cell to fill out some paperwork, after which, the Institution Classification Team ("ICT") reviews the request (DE 29-1 at 15-17, 69-70). Plaintiff testified that he understands that Classification Officers oversee inmate housing and cell assignments (DE 29-1 at 72-73, 91).

10. Plaintiff agreed that he had access to his Classification Officer while in disciplinary confinement (DE 29-1 at 15-17). Plaintiff did not, however, request protective confinement from his Classification Officer (DE 29-1 at 86).

11. Once released into general population on July 13, 2021, Plaintiff's assigned cellmate was Donovan Kelley ("Inmate Kelley") (DE 29-1 at 48). Plaintiff testified that he knew Inmate Kelly prior to his transfer to MCI because they were both Bloods and had previously shared a cell at another prison (DE 29-1 at 66). Plaintiff testified that Inmate Kelly attacked him at least once at the prior facility (DE 29-1 at 92).

12. On July 14, 2021, Inmate Kelly stabbed Plaintiff twice in the right hand and once on the side of Plaintiff's stomach (DE 29-1 at 54-55, DE 29-4).

13. After the attack, Plaintiff told corrections officers that he could not return to his cell and that he needed protection (DE 29-1 at 56-57, 72-74). Plaintiff did not tell the officers the identity of his attacker due to concerns of being labeled a snitch (DE 29-1 at 56-57, 72-74).

14. As a result of his request, prison officials placed Plaintiff in administrative confinement, apart from general population (DE 29-2 at 14). Plaintiff testified that he received a

routine pre-confinement medical exam on July 14, 2021, which did not note any injuries (DE 29-1 at 58-59).

15.   Plaintiff testified that, after he noticed the lack of noted injuries on the medical exam, he requested another exam to document the injuries he incurred from the attack by Inmate Kelly (DE 29-1 at 59-60, DE 29-5 at 17-19).  The second medical exam, performed on July 16, noted a 1–2-centimeter scab on Plaintiff's right hand and excoriation on Plaintiff's right side (DE 29-5 at 18).  Prison officials prescribed bacitracin ointment and gave Plaintiff instructions on wound care (DE 29-5 at 18).

16.   Plaintiff testified that he has filed numerous grievances throughout his period of incarceration, and that he understands the process for filing grievances (DE 29-1 at 15-17, 69-70). At some point between July 14 and July 21, 2021, Plaintiff submitted a grievance to ICT, explaining his history of gang-related assaults, the July 14 attack, and his alleged conversation with Defendant on July 1 (DE 45 at 33, DE 29-1 at 83).  In that grievance, Plaintiff requested to be placed in permanent protective custody (DE 45 at 33, DE 29-4).

17.   In light of Plaintiff's request, on July 30, 2021, prison officials transferred him to protective management upon the recommendation of ICT (DE 45 at 33, DE 29-4, DE 29-2 at 14, DE 29-1 at 50-51).

### III.   SUMMARY JUDGMENT STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact ... the court may ... grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (cleaned up).

In deciding a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court also must resolve ambiguities and draw justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## IV.    ANALYSIS

Defendant moves for summary judgment, arguing that (1) the undisputed facts show Plaintiff cannot prove an Eighth Amendment failure-to-protect claim as a matter of law; (2) Defendant enjoys qualified immunity in her individual capacity; and (3) the Prison Litigation Reform Act ("PLRA") prohibits relief on any claim for damages, apart from nominal damages.

As set forth below, the Court agrees summary judgment should be entered on ground (2), namely, that Defendant enjoys qualified immunity from this suit. The Court finds it unnecessary to address the remaining arguments.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (cleaned up). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (cleaned up). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Id.* "Qualified immunity is the rule, not the exception." *Rowe v. Schreiber*, 139 F.3d 1381, 1385 (11th Cir. 1998).

Qualified immunity applies only to state actors in the performance of their official "discretionary functions." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004). Here, Plaintiff alleges that Defendant violated the Eighth Amendment by failing to protect Plaintiff from harm while incarcerated in the Florida prison system (DE 1 at 5-7). The Court finds these actions to be "discretionary functions."

Once the Court finds a discretionary function, the burden shifts to Plaintiff to demonstrate that qualified immunity does not apply. *Id.* at 1264. In order to meet this burden, Plaintiff must satisfy a two-step test: (1) he must show that Defendant committed a constitutional violation, and (2) he must show the constitutional right at issue was "clearly established" at the time of the

7

violation. *Id.*; *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). To satisfy this second step, "preexisting law must dictate, that is, truly compel (not just suggest or raise a question about), the conclusion for every like situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Lassiter v. Ala. A&M Univ. Bd. of Trs.*, 28 F.3d 1146, 1150 (11th Cir. 1994). "Put another way, the defendant must have fair notice of his conduct's unconstitutionality, which derives from one of the following sources: (1) the obvious clarity of constitutional or statutory language; (2) broad holdings or statements of principle in case law that are not tied to particularized facts; or (3) fact-specific judicial precedents that are not fairly distinguishable." *Eloy v. Guillot*, 289 F. App'x 339, 346 (11th Cir. 2008).

The Court finds summary judgment should be entered here because Plaintiff cannot satisfy his burden under the second step of the two-step test for overcoming qualified immunity; that is, Plaintiff cannot show Defendant committed a "clearly established" violation of his Eighth Amendment rights. As a general rule, the Eighth Amendment requires prison officials "to take reasonable measures to guarantee the safety of the inmates, including protecting inmates from violence at the hands of other inmates." *Rhiner v. Sec'y, Florida Dep't of Corr.*, 817 F. App'x 769, 774 (11th Cir. 2020) (cleaned up). To prove a failure-to-protect claim, a § 1983 plaintiff must show (1) that a substantial risk of serious harm existed; (2) that the defendant acted with deliberate indifference to the risk; and (3) that a causal connection existed between the defendant's conduct and the resulting harm to the plaintiff. *Gaffney v. Warden, Taylor Corr. Inst.*, No. 20-13572, 2022 WL 18381, at *3 (11th Cir. Jan. 3, 2022).

The Court finds Plaintiff cannot show "clearly established" violations of these elements. Specifically, to show causation, a § 1983 plaintiff must prove the defendant "was in a position to take steps that could have averted the [harm] but, through deliberate indifference, failed to do so."

8

*Marbury v. Warden*, 936 F.3d 1227, 1248-49 (11th Cir. 2019) (cleaned up).  In *Rodriguez v. Sec'y for Dept. of Corr.*, 508 F.3d 611, 614-22 (11th Cir. 2007), for example, a prison inmate sued a warden and an assistant warden on a failure-to-protect claim after the inmate repeatedly warned both officials, verbally and in writing, that he was in danger due to gang-related threats.  The record showed that both men thereafter participated in a classification meeting and, despite being aware of the threats, affirmatively recommended that the inmate be released into general population, where he was stabbed.  *Id.* at 616.  On these facts, the Eleventh Circuit concluded a reasonable jury might find causation.  *Id.* at 620, 622-24.

The record here is different.  Defendant, as a corrections officer assigned to the STG division, played no role in, nor made any recommendations regarding, the decision to release Plaintiff into general population.  At most, viewing all facts in the light most favorable to Plaintiff, Defendant failed to convey Plaintiff's orientation conversation to *other* prison officials who made the classification decision.  Meanwhile, Plaintiff concedes he had at least thirteen days following orientation, while in disciplinary confinement, to request protective confinement from his Classification Officer, but Plaintiff failed to make any such request.  As to the notion that Defendant placed Plaintiff in danger by publicly announcing his gang affiliation in front of other inmates, the record contains no indication that Inmate Kelly learned of Plaintiff's gang affiliation based on Defendant's alleged remarks to other inmates.  To the contrary, the evidence shows Inmate Kelly knew Plaintiff personally because the two had been cellmates together at a previous prison and because they belonged to the same gang.

Plaintiff has failed to cite, and the Court has failed to locate, any controlling, fact-specific authority that would recognize Eighth Amendment failure-to-protect liability under the circumstances of this case.  To overcome qualified immunity, Plaintiff bears the burden to identify

9

controlling authority that would have given Defendant fair notice that her conduct violated the Eighth Amendment. The Court finds Plaintiff has not met this burden. As such, Plaintiff has not shown "clearly established" violations of constitutional law, and the Court therefore recommends that summary judgment be entered based on the doctrine of qualified immunity.

**V.     RECOMMENDATION & NOTICE OF RIGHT TO OBJECT**

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that the Motion (DE 30) be **GRANTED**.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 3rd day of January 2024.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE

cc: counsel of record; Plaintiff, *pro se*.